## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LOUANN SPEESE STANLEY,

    Plaintiff,

  v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO. 3:20-CV-00263

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Louann Speese Stanley ("Stanley") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). The matter was referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). The parties thereafter consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1), to adjudicate all proceedings related to this action. (Doc. 12).

For the following reasons, the Court will affirm the Commissioner's decision to deny Stanley benefits, direct final judgment in favor of the Commissioner, and direct the Clerk of Court to close this case.

## I. BACKGROUND AND PROCEDURAL HISTORY

In April 2017, Stanley protectively filed an application for Title II disability insurance benefits, claiming disability beginning November 22, 2002, due to depression. (Doc. 9-2, at 12; Doc. 9-6, at 5). The Social Security Administration initially denied the application on

June 13, 2017, and Stanley filed a written request for hearing on August 18, 2017. (Doc. 9-2, at 12). Stanley appeared and testified at a hearing held on July 24, 2018. (Doc. 9-2, at 12). At this hearing, the alleged onset date was amended to April 3, 2016. (Doc. 9-2, at 12). In a written decision dated November 7, 2018, the ALJ determined that Stanley was not disabled and therefore not entitled to benefits under Title II. (Doc. 9-2, at 21).

On February 13, 2020, Stanley commenced the instant action. (Doc. 1). The Commissioner responded on May 6, 2020, providing the requisite transcripts from Stanley's disability proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs (Doc. 13; Doc. 14; Doc. 15), with Stanley alleging three grounds for reversal or remand. (Doc. 13, at 2-3).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[1] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

3

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Stanley is disabled, but whether the Commissioner's determination that Stanley is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that "[Stanley] was not under a disability, as defined in the Social Security Act, at any time from April 3, 2016, the alleged onset date, through September 30, 2016, the date last insured." (Doc. 9-2, at 21). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). Initially, the ALJ determined that Stanley's "earnings record shows that [she]

4

has acquired sufficient quarters of coverage to remain insured through September 30, 2016." (Doc. 9-2, at 12).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Stanley] did not engage in substantial gainful activity during the period from her alleged disability onset date of April 3, 2016 through her date last insured of September 30, 2016." (Doc. 9-2, at 14).

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ considers step three. Here, the ALJ found that Stanley had three severe medically determinable impairments: major depressive disorder, degenerative disc disease of the lumbar spine, and degenerative disc disease of the cervical spine. (Doc. 9-2, at 14). The ALJ further determined that while Stanley suffered from other medically determinable

impairments, none were severe. (Doc. 9-2, at 14-15).

C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that none of Stanley's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 9-2, at 15). The ALJ specifically considered Listing 1.04 – disorders of the spine, and Listing 12.04 – depressive, bipolar and related disorders. (Doc. 9-2, at 15-16); *see* 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 1.04, 12.04.

D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)-(c).

Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Stanley had the RFC to perform the full range of

medium work as defined in 20 C.F.R. § 404.1567(c) "except [Stanley] can frequently climb ramps or stairs, but only occasionally climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch, or crawl." (Doc. 9-2, at 16). Additionally, the ALJ implemented the following non-exertional limitations: "[Stanley] can understand, remember or carry out simple instructions, and she can make judgments on simple work-related decisions." (Doc. 9-2, at 16).

E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform h[er] past relevant work despite h[er] limitations, [s]he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that Stanley's past relevant work as a sales representative and real estate agent does not meet the requirements for substantial gainful activity. (Doc. 9-2, at 19). Therefore, Stanley had no past relevant work under 20 C.F.R. § 404.1565 and the ALJ proceeded to step five of the analysis. (Doc. 9-2, at 19).

F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Stanley's age (57 years

7

old on the date last insured, defined as "a younger individual age 18-49" during the relevant period), education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Stanley could have performed. (Doc. 9-2, at 19). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Stanley could perform the requirements of representative occupations such as laundry-laborer (DOT No. 361.687-018, medium, SVP2, with 420,000 positions nationally), machine feeder (DOT No. 699.686-010, medium, SVP2, with 150,000 positions nationally), and dining room attendant (DOT No. 311.677-018, medium, SVP2, with 156,000 positions nationally). (Doc. 9-2, at 20).

Based on his determinations, the ALJ concluded that Stanley was not disabled and therefore denied her application for benefits. (Doc. 9-2, at 20-21).

## IV.   DISCUSSION

Stanley presents three challenges to the ALJ's decision. (Doc. 13, at 2-3). First, she asserts that the record lacks substantial evidence supporting the ALJ's conclusion that she was capable of performing SGA level work at a medium exertion level. (Doc. 13, at 2). Second, Stanley contends that the ALJ erred in failing to fully develop the medical evidence of record. (Doc. 13, at 3). Finally, Stanley submits that the ALJ relied on medical records which were not part of the record. (Doc. 13, at 3). The Court will take up the first two arguments in turn, while disposing of the third argument in a footnote.

### A.   THE ALJ DID NOT ERR IN CONCLUDING STANLEY WAS CAPABLE OF PERFORMING MEDIUM EXERTION WORK AT AN SGA LEVEL.

Stanley's first challenge to the ALJ's decision is that there is no substantial evidence in the record which would support the conclusion that she could perform medium exertion work. (Doc. 13, at 3). She submits that the record establishes severe impairments in the form

of degenerative disc disease of the lumbar spine and cervical spine, as well as a major depressive disorder which likely caused memory and cognitive problems. (Doc. 13, at 3-4). Though Stanley's past work – which was performed at a light exertion level – did not rise to the level of substantial gainful activity, the ALJ concluded that she had the ability to perform SGA level work at a medium exertion level. (Doc. 13, at 4; Doc. 9-2, at 16, 19). Stanley submits that "the problem with the ALJ's conclusion in this regard is that there are no RFC determinations or any other medical evidence of record that support the conclusion that Ms. Stanley has the ability to perform SGA level work at a medium level of exertion." (Doc. 13, at 4-5).

The Commissioner responds that it is the ALJ's exclusive duty to make an RFC assessment, and that he is not required to align that assessment with a specific medical opinion. (Doc. 14, at 15-16). The ALJ identified evidence of "normal" physical capabilities and Stanley "has not identified any medical evidence of resulting functional limitations that would preclude her performance of medium work with postural limitations as the ALJ assessed." (Doc. 14, 17-18).

Of utmost importance in this case is the law that it is the claimant's burden of proof to establish disability at steps one through four. Hess, 931 F.3d at 201; see 20 C.F.R. § 404.1512(a)(1). As such, Stanley bears the burden of proving that her impairments preclude her from performing medium exertion work at an SGA level. See Hess, 931 F.3d at 201. Once the claimant presents such evidence, then it becomes the ALJ's responsibility to either identify substantial evidence contradicting that limitation or otherwise conclude that the claimant is limited as averred. See 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."). It is only after the claimant has presented evidence of a certain

level of disability that the ALJ must explain which medical opinion she or he relies on in determining a higher-functioning RFC than the claimant's evidence supports. *See Goodman v. Berryhill*, 2018 WL 4102860, at *9-10 (M.D. Pa. 2018).

In *Goodman*, the claimant presented substantial evidence of disability. After a consultative examination, a doctor "noted that Goodman had a noticeably difficult time getting up from his seat; walked slowly due to his back pain; and had a limited range of motion in his bilateral lower extremities due to pain." *Goodman*, 2018 WL 4102860, at *2. Additionally, his treating physician opined that he was capable of sitting four to six hours; standing or walking one hour; could occasionally lift up to ten pounds; rarely lift up to twenty pounds; occasionally push, pull, and reach in all directions; and frequently handle, finger, and feel. *Goodman*, 2018 WL 4102860, at *3. Moreover, a state agency reviewing psychologist opined on specific limitations as to his social functioning. *Goodman*, 2018 WL 4102860, at *3.

In reaching his RFC determination, the ALJ did not assign "great" or "significant" weight to any medical opinion. *Goodman*, 2018 WL 4102860, at *8. "Indeed, the ALJ afforded 'little weight' to the opinion of Dr. Hartmann, the only physician who authored an opinion regarding Goodman's physical impairments." *Goodman*, 2018 WL 4102860, at *8. In this context, the ALJ must communicate which medical opinion he or she relies on in fashioning an RFC which is not aligned with an opinion on record. *Goodman*, 2018 WL 4102860, at *10. However, this holding is predicated on there being medical opinion evidence on record. *See Goodman*, 2018 WL 4102860, at *9 ("Moreover, *Cummings* presented a scenario where no medical opinion evidence regarding the Claimant's physical impairments existed in the record. Thus, the Court is not persuaded by the application of *Cummings* and *Chandler* here.") (internal citation omitted).

In *Cummings v. Colvin*, 129 F. Supp. 3d 209 (W.D. Pa. 2015), the plaintiff "takes issue with the ALJ's RFC finding, arguing that it is not supported by substantial evidence because there was no medical opinion in the record regarding Plaintiff's physical impairments." *Cummings*, 129 F. Supp. 3d at 214. The record contained no medical opinion as to the claimant's physical impairments. *Cummings*, 129 F. Supp. 3d at 214. The Court explained that the RFC assessment "must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and descriptions of his own limitations." *Cummings*, 129 F. Supp. 3d at 217 (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)). When there is no medical opinion evidence in the record, the ALJ is not required to support the RFC with a medical source opinion. *Cummings*, 129 F. Supp. 3d at 217; *Goodman*, 2018 WL 4102860, at *9.

Here, like in *Cummings,* there is no medical opinion evidence in the record.[2] In support of her position that she is incapable of performing work at a medium exertion level, Stanley identifies only her diagnoses. (Doc. 13, at 3-6). She fails to show which evidence would support a finding that she is incapable of medium exertion work. (Doc. 13, at 3-6). In support of his RFC, the ALJ identified an assortment of medical findings that Stanley's physical and cognitive abilities were normal and that her depression symptoms had improved as of the period at issue. (Doc. 9-2, at 17-19). The ALJ, having not been presented evidence that Stanley was unable to perform work at the medium exertion level, was not precluded from concluding that she had the residual functional capacity to perform medium work. *See Hess*, 931 F.3d at 201. For this reason, the Commissioner's decision shall not be vacated on this ground.

---

[2] Due to insufficient evidence, a State Agency psychological consultant could not make a determination as to Stanley's limitations. (Doc. 9-2, at 5).

B.    THE ALJ WAS NOT OBLIGATED TO FURTHER DEVELOP THE MEDICAL
EVIDENCE OF RECORD.

Stanley next asserts that the ALJ failed in his duty to develop a full and fair record.
(Doc. 13, at 6-7). She avers that she established degenerative disc disease in her lumbar and
cervical spines which caused low back pain and upper extremity numbness. (Doc. 13, at 7-8).
Stanley alleges that it was wrong for the ALJ to conclude that she could perform medium
exertion work, which she had never performed before, absent a medical assessment of how
her symptoms would impact her physical abilities. (Doc. 13, at 8). Her depression, too,
allegedly interfered with her ability to work, yet the ALJ failed to equip himself with the
necessary information to develop a thorough determination. (Doc. 13, at 8-10). According to
Stanley, the ALJ should have procured a consultative evaluation or other medical assessment
of limitations. (Doc. 13, at 10).

The Commissioner responds that the ALJ was not required to seek outside expert
assistance. (Doc. 14, at 21). The evidence in the record, "reflecting essentially normal physical
and mental examination findings," was sufficient to allow the ALJ to craft an RFC. (Doc. 14,
at 22). Stanley's day-to-day activities also supported the RFC finding, according to the
Commissioner. (Doc. 14, at 22-23).

When making an RFC determination, the ALJ is obligated to develop the record fully
and fairly. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This obligation may entail a
consultative examination requirement. 20 C.F.R. § 404.1519(a)(b)(4). Such examinations are
"require[d]" when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence
must be resolved, … or [t]here is an indication of a change in [the claimant's] condition that
is likely to affect [his or her] ability to work, but the current severity of [the] impairment is not
established. 20 C.F.R. § 404.1519(a)(b)(4)-(5). If the claimant does not establish "that such an

12

examination is necessary to enable the ALJ to make the disability decision," then the procurement of a consultative examination is left to the discretion of the ALJ. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).

> When … an ALJ fashions a residual functional capacity determination on a sparse factual record in the absence of any competent medical opinion evidence which indicates that the claimant is disabled, reviewing courts should adopt a pragmatic view and sustain the ALJ's exercise of independent judgment if that decision is properly based upon all of the facts and evidence.

*Woodman v. Berryhill*, 2018 WL 1056401, at *5 (M.D. Pa. 2018).

Here, Stanley does not show that a consultative examination was necessary for the ALJ to reach a disability decision. *See Thompson*, 45 F. App'x at 149. When the evidence is considered as a whole, no conflicts are revealed; it consistently shows that Stanley retained normal functional abilities, both physically and mentally. In support of his RFC, the ALJ identified medical records from 2013 to 2017, a time period encompassing the six-month period at issue in 2016.[3] (Doc. 9-2, at 17-18). These records evince unremarkable findings. (Doc. 9-2, at 17-18; Doc. 9-7). In December 2013, "treatment notes indicate that [Stanley] was evaluated… for right upper arm paranesthesia with a neurological evaluation, including an EMG/NCS test, which was nonrevealing." (Doc. 9-2, at 17; Doc. 9-7, at 6-9). In January 2014, a medical exam for neck and arm pain and numbness revealed that Stanley had "no acute distress, has good range of motion in her neck and in both arms and has good reflexes, strength, and sensation with no provocative shoulder signs." (Doc. 9-2, at 17-18; Doc. 9-7, at 104). Additionally, an August 2015 neurological exam was unrevealing. (Doc. 9-2, at 17;

---

[3] The ALJ erroneously described a treatment note from November 2017 as being from May 2018. (Doc. 9-2, at 18; Doc. 9-7, at 229-235). This note was actually closer in temporal proximity to the period at issue than the ALJ stated, therefore the ALJ's error was not prejudicial to Stanley and the decision shall not be vacated on this ground. (Doc. 13, at 10-11).

Doc. 9-7, at 2-5).

Moving closer to the period at issue, the ALJ noted that in October 2016, "treatment notes indicate that [Stanley's] depression symptoms had improved and she had stopped taking Cymbalta about six months earlier because she felt that it was not working." (Doc. 9-2, at 18; Doc. 9-7, at 21). Treatment notes from this time period also indicated that "[Stanley] has a normal mood and affect with normal behavior and thought content." (Doc. 9-2, at 18; Doc. 9-7, at 19, 23). Finally, the ALJ addressed Stanley's lower back pain by identifying a March 2017 treatment note that Stanley was "not in distress with normal temperature and color in her lower back with no soft tissue swelling or palpable tenderness, has normal range of motion of the back with discomfort with the left rotation and right lateral flexion." (Doc. 9-2, at 18; Doc. 9-7, at 105). This same note showed "normal tendon reflexes, strength is 5/5 in the lower extremities, negative straight leg raise, intact sensation to light touch, and that the claimant has a normal gait and is able to walk heel to toe." (Doc. 9-2, at 18; Doc. 9-7, at 105). Later, in November 2017,[4] Stanley exhibited nothing abnormal, including with regard to the range of motion in her neck and the strength in her right upper extremity. (Doc. 9-2, at 18; Doc. 9-7, at 229-233). On this visit, Stanley was pain-free on active and passive manipulation of the wrist, elbow, and shoulder. (Doc. 9-2, at 18; Doc. 9-7, at 233).

This evidence, relied on by the ALJ, is sufficient to warrant a finding that Stanley could perform SGA level work at a medium exertion level. Under the deferential standard of review this Court undertakes, substantial evidence supports the ALJ's evaluation. As such, no consultative evaluation was required and the ALJ's decision shall not be vacated on this

---

[4] The ALJ mistakenly dated this medical note May 2018, appearing to confuse the print date with the exam date. (Doc. 9-2, at 18; Doc. 9-7, at 229, 232-33).

ground.

## V.   CONCLUSION

Based on the foregoing, the Court will **AFFIRM** the Commissioner's decision, direct that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Stanley, and direct the Clerk of Court to **CLOSE** this case.

An appropriate order will follow.

BY THE COURT:

Dated: August 21, 2020               *s/Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**